# UNITED STATES DISTRICT COURT

## District of Kansas

(Topeka Docket)

**UNITED STATES OF AMERICA,**
        **Plaintiff,**


        **v.**                    CASE NO. `12-40121-01-02-JAR`


**ROBERT D. ORR and**
**LELAND G. ORR,**
                **Defendants.**

---

# INDICTMENT

---

**THE GRAND JURY CHARGES**:

## COUNT ONE

### *Conspiracy To Defraud The Securities And Exchange Commission*

1.        Beginning on or about January 1, 2007, and continuing until on or about December 31, 2008, said dates being approximate, and inclusive, in the State and District of Kansas, and elsewhere, the defendants,

**ROBERT D. ORR** and
**LELAND G. ORR**

did knowingly and willfully combine, conspire, confederate, and agree with each other, and with persons known and unknown to the Grand Jury,

-1-

(a)     to defraud the United States, and one of its agencies, the United States

Securities and Exchange Commission ("SEC"), by impeding, impairing,

defeating and obstructing the lawful governmental functions of the SEC;

(b)     to, commit the following offenses against the United States,

     (I)     failing as corporate officers to properly disclose material

information, and making or causing to be made, false and

misleading statements with respect to material facts in

Quarterly (10-Q) and Annual (10-K) Reports required to be

filed with the SEC under the Securities Exchange Act of

1934, in violation of Title 15, United States Code, Section

78ff(a) and Title 18, United States Code, Sections 2 and 3551,

et. seq.

## BACKGROUND

At all times material to this Indictment:

### Federal Securities Regulation of Publicly Held Companies

2.     The SEC is an independent agency of the executive branch of the United

States Government whose duties include regulating and monitoring the trading of

securities and the reporting of financial and other information by publicly-held

corporations within the United States.

3.     In performance of its duties, the SEC also requires public companies whose

shares are registered with the SEC to file, and make available to their shareholders,

quarterly and annual reports on prescribed forms (respectively 10-Q and 10-K Reports) reflecting the company's financial condition and operations.   Such reports are required to contain accurate and complete financial statements detailing the particular corporation's financial condition and performance for the reporting period.   The 10-Q and 10-K Reports are used not only by shareholders and investors, but also by financial institutions.   Banks and other lending companies rely upon quarterly and annual reports for loan approval, loan renewal, securitization, and loan participation purposes.   Such reports depict the financial health and viability of company operations.

<u>RELATED COMPANIES</u>

(4)     BROOKE CORPORATION, a Kansas Corporation previously headquartered in Overland Park and Phillipsburg, Kansas was a holding company primarily engaged in insurance franchising, insurance agency financing and banking. Brooke Corporation owned a majority interest in and therefore consolidated the financial results of Brooke Capital, Aleritas, and Brooke's Savings Bank ("Brooke Savings"), a/k/a/ Generations Bank.   At all times relevant to this Indictment, Brooke Corporation's common stock was registered with the SEC pursuant to 12(b) of the Exchange Act. Brooke Corporation's stock was traded on NAS-DAQ Global Markets until it was suspended from trading on November 2, 2008, and delisted on or about November 24, 2008.

(5)     BROOKE CAPITAL, a Kansas Corporation previously headquartered in Overland Park and Phillipsburg, Kansas, was primarily a franchiser of insurance agencies.

At all times relevant to this Indictment, Brooke Capital's common stock was registered with the SEC pursuant to Section 12(b) of the Exchange Act.   Brooke Capital's stock was traded on the American Stock Exchange until it was suspended from trading on November 10, 2008, and delisted on or about December 22, 2008.

(6)    ALERITAS, (f/k/a BROOKE CREDIT CORPORATION), a Kansas Corporation previously headquartered in Overland Park, Kansas, originated and serviced loans for the purchase and operation of Brooke Capital franchises, and other primarily insurance-related businesses.   At all relevant times, Alteritas' common stock was registered with the SEC pursuant to Section 12(g) of the Exchange Act.   Aleritas' common stock was traded on the OTC Bulletin Board through early December, 2008, at which time it began trading on the Pink Sheets Exchange.  On or about November 14, 2008, Aleritas ceased all operations and transferred applicable loan servicing duties to other lenders or securitization trustees.  On August 28, 2009, pursuant to Aleritas' consent, the SEC revoked the registration of the company's securities.

(7)    Brooke Holdings, Inc. ("BHI") was a private holding company for the **ORR** family ownership of Brook Corporations.  BHI owned approximately 43% of Brooks Corporation.    BHI was in turn owned by **ROBERT D. ORR** (approximately 74%), **LELAND G. ORR** (approximately 22%) and various other **ORR** family members (the remaining 4%).

(8)    Collectively, Brooke Corporation, Brooke Capital, and Aleritas are referred to as "the Brooke Companies."

(9)     Although the Brooke Companies were individual, publicly-traded corporations, they were extremely interdependent for core business purposes.   Brooke Capital and Aleritas, for example, operated as complimentary entities.   Brooke Capital sold insurance agency franchises and provided bookkeeping and other support services for its franchises.   Aleritas sold the majority of loans it made to franchisees, but typically remained responsible for loan servicing.   Almost all individuals that purchased insurance franchises from Brooke Capital did so by obtaining a loan originated by Aleritas.   On average, Brook Capital's franchisees made up more than half of Aleritas' loan portfolio.

(10)     Over the course of its operation, including 2007 and 2008, Brooke Capital's franchise numbers and franchise growth figures were important metrics for investors and lending institutions because the company's largest sources of revenue were new franchise sales and its retention of a percentage of insurance commissions earned by existing franchisees.

(11)     Historically, Brooke Capital added franchise locations by convincing pre-existing independent insurance agencies to become Brooke franchisees, calling such additions "conversions".   However, in 2004, Brooke Capital began its so-called "startup" franchise program, in which individuals attempted to start Brooke insurance agencies from scratch.   By approximately 2006, and thereafter, the startup program became the main generator of Brooke Capital's purported franchise location growth.

(12)     In general, startup franchisees paid an up-front franchise fee ranging from $125,000 to $165,000.   Most startup franchisees could then draw some funds for

working capital for salary and other expenses while they attempted to build their insurance agency business.   With little or no down payment, startup franchisees typically financed the entirety of their franchise fee and initial working capital with an 8-18 month no principal or interest balloon loan originated by Aleritas.

(13)    Over time, and culminating in the 2007 and 2008 time-period, the Brooke Companies experienced increasingly dire liquidity conditions and rapidly declining franchise financial health.   In attempting to conceal financial problems, Brooke Companies' management misrepresented the numbers of viable franchises, the health of Aleritas' loan portfolio and other material financial information to the SEC, investors and lenders.   In October, 2008, following the filing of a lawsuit by investors and lenders, Brooke Corporation and Brooke Capital declared Chapter 11 bankruptcy and suspended most of their operations.   Aleritas did not file bankruptcy but instead ceased all operations and transferred its loan servicing duties directly to its lenders and securitization trustees. The Brooke Companies were unable to reorganize in bankruptcy, and in June, 2009, the proceedings were converted to liquidation under Chapter 7 of the bankruptcy code.

<u>DEFENDANTS</u>

(14)    **ROBERT D. ORR** was the founder and chairman of the boards of directors of Brooke Corporation and Brooke Capital until October 2008.   He served as Chief Executive Officer ("CEO") of Brooke Capital from August, 2008 through October, 2008. **ROBERT D. ORR** also served as Chief Financial Officer ("CFO") of Aleritas from March, 2008 until October, 2008.   Through a closely held company, Brooke Holdings,

Inc., **ROBERT D. ORR** was the largest shareholder of Brooke Corporation, Brooke

Capital and Aleritas.

(15)   **LELAND G. ORR** was Brooke Corporation's CFO from 1986 through

March, 2008, its CEO from March, 2008 through October, 2008 and vice-chairman of its

board of directors from 2007 through October, 2008.   **LELAND G. ORR** also served as

the CFO of Brooke Capital from November, 2007 until August, 2008.   He has been

licensed as a C.P.A. in Kansas since 1988.

<u>DEFENDANTS' ROLES IN THE BROOKE COMPANIES' SEC</u>
<u>FILINGS AND OTHER PUBLIC STATEMENTS</u>

(16)   At all times relevant to this Indictment, because Brooke Capital and Aleritas

were material reporting entities, Brooke Corporation's periodic SEC filings pursuant to

the Securities and Exchange Act largely repeated the substantive disclosures contained in

those companies' respective SEC filings.   On May 28, 2008, Brooke Corporation filed a

Form S-3 with the SEC that incorporated by reference the company's 2007 Form 10-K

and its Form 10-Q for the first quarter of 2008.    The Form S-3 registers securities under

the Securities and Exchange Act of 1933 for companies that are based in the United

States.

(17)   **ROBERT D. ORR** had primary responsibility for drafting the

Management's Discussion and Analysis ("MD&A") and other substantive disclosures for

the following SEC filings:   2007 Forms 10-K for Brooke Corporation and Brook Capital;

and Forms 10-Q for the first and second quarters of 2008 for Brooke Corporation, Brooke

Capital and Aleritas.   He also signed the 2007 Forms 10-K for Brooke Capital and

Brooke Corporation, and Brooke Corporation's Form S-3.   In addition, he signed and

certified the accuracy of Brooke Capital's Form 10-Q for the second quarter of 2008 and

Aleritas' Forms 10-Q for the first and second quarters of 2008.   **ROBERT D. ORR** also

spoke on Aleritas' financial analyst conference calls on May 12, 2008, and August 18,

2008.

(18)   **LELAND G. ORR** signed and certified the accuracy of Brooke

Corporation's 2007 Form 10-K and first and second quarter 2008 Forms 10-Q, signed

Brooke Corporation's Form S-3, and signed and certified the accuracy of Brooke

Capital's 2007 Form 10-K and first quarter 2008 Form 10-Q.   Although **LELAND G.**

**ORR** resigned as Brooke Capital's CFO on August 15, 2008, he prepared the financial

statements for the company's second quarter 2008 Form 10-Q, which was filed with the

SEC three days after his resignation.

### PRINCIPAL OBJECTS OF THE CONSPIRACY

(19)   It was an object of the conspiracy for defendants **ROBERT D. ORR** and **LELAND G. ORR** to circumvent the federal statutory and regulatory restrictions and requirements governing the annual and quarterly reporting to the SEC of relevant information regarding the financial positions of Brooke Corporation, Brooke Capital and Aleritas in order to conceal and misrepresent the financial viability of Brooke Capital's franchise business, Aleritas' loan portfolio, and the increasingly declining liquidity and poor financial condition of the Brooke Companies to regulators, shareholders, investors, and financial institutions.

(20)   It was a further object of the conspiracy for defendants **ROBERT D. ORR** and **LELAND G. ORR** to present a false aggregate picture of the Brooke Companies' financial condition to investors, shareholders, regulators, auditors, securitization lenders and financial institutions, and to present a false picture of sound financial health, in order to obtain, and further obtain, money, dividend payments and cash transfers for themselves.  For example, from the fourth quarter of 2007, until Brooke Corporation filed for bankruptcy in October, 2008, Brooke Corporation made dividend payments and other cash transfers to BHI, the **ORR's** holding company, totaling more than $4.5 million dollars.  From the fourth quarter of 2007, until Brooke Corporation filed for bankruptcy in October, 2008, defendant **ROBERT D. ORR** received at least $771,147.37 and **LELAND G. ORR** received at least $270,000.00 in dividends and other payments from Brooke Holdings, Inc.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

(21)    It was part of the manner and means of carrying out the conspiracy that defendants **ROBERT D. ORR** and **LELAND G. ORR** materially misrepresented, concealed or failed to disclose to the investing public, regulators, auditors, banks and credit facilities  information regarding its financial conditions and results of operations in the following respects, all for the purpose of misleading the SEC, obtaining money and funds from banks, investors and other lenders by deceptive means, and for self-enrichment, to wit:

(a)    Misrepresenting and failing to disclose Brooke Capital's aggregate franchise location numbers and declining growth by the inclusion of abandoned and failed locations in SEC reports;

(b)    Misrepresenting and failing to disclose information regarding the financial condition of Brooke Capitals' franchises, and the nature and extent of Brooke Capital's financial assistance to franchisees.

(c)    Misrepresenting and failing to disclose information regarding Brooke Capital's start-up franchise program, including: the criteria by which Brooke Capital and/or Aleritas defined start-up locations as "successful"; the success/failure rate of start-up franchisees; Brooke Capital's extension of the initial start-

up period for some franchisees; and the number of start-up

franchisees in default on their loans with Aleritas;

(d)     Misrepresenting and failing to disclose information regarding

Brooke Capital's financial condition and results of operation,

including, but not limited to, Brooke Capital's profitability,

liquidity and cash flow;

(e)     Misrepresenting and failing to disclose information

concerning the Brooke Companies' sale or pledging of the

same loans to more than one lender;

(f)     Misrepresenting and failing to disclose that as a loan servicer,

Aleritas received payments from borrowers that it was

obligated to promptly remit to lenders that owned the

underlying loans, but instead diverted the borrower payments

for Aleritas's operating expenses;

(g)     Misrepresenting and failing to disclose the rapid deterioration

of Aleritas's loan portfolio by misrepresenting loan

performance reports to lenders, understating loan loss

reserves, and failing to properly write-down Aleritas's

residual interests in securitization and credit facility assets.

<u>OVERT ACTS</u>

(22)    In furtherance of the conspiracy and to effect the objects thereto, one or

-11-

more overt acts were carried out by at least one co-conspirator in the State and District of Kansas and elsewhere, which overt acts included the following:

(a)     On or about March 14 to 17, 2008, defendant **ROBERT D. ORR** submitted, or caused to be submitted, false and misleading 2007 Form 10-K Reports to the SEC for Brooke Corporation and Brooke Capital;

(b)     On or about March 17, 2008, defendant **LELAND G. ORR** certified the accuracy of Brooke Corporation's 2007 Form 10-K Report to the SEC;

(c)     On or about March 14, 2008, defendant **ROBERT D. ORR** failed to include and disclose the failure of 150 startup franchise locations as an unfavorable operations trend in the MD&A section of Brooke Capital's 2007 Form 10-K Report to the SEC;

(d)     On or about March 14, 2008, the defendants submitted or caused to be submitted, a misleading 2007 Form 10-K Report for Brooke Capital by falsely stating that the rate of the new franchise growth had "slowed" in the fourth quarter of 2007 "primarily as the result of our .... initiative to emphasize quality of franchisees over quantity of franchisees" without disclosing that Brooke Capital had only added nine new

franchises in the fourth quarter and was experiencing much

difficulty in recruiting new franchisees;

(e)     The defendants misstated and misrepresented the total

viability of its franchise operations in Brooke Capital's 2007

Form 10-K Report by including failed franchise locations in

the company's franchise totals;

(f)     On or about March 10, 2008, a person known to the Grand

Jury drafted and caused the issuance of a false and misleading

Aleritas company press release;

(g)     A person known to the Grand Jury spoke and purported false

and misleading statements on Brooke Capital's March 14,

2008 financial analyst conference call;

(h)     On or between approximately January to August, 2008, the

defendants misrepresented and publicly misstated to lenders

and the SEC the total number of Brooke Company franchises

and the financial health of their franchisees.   Additionally,

the defendants made or caused to be made false and

misleading public statements reporting continued robust sales

of new franchises commensurate with company growth;

(i)     On May 12, 2008, defendant **ROBERT D. ORR** falsely

stated in response to a financial analyst's question during an

Aleritas Analyst conference call that there remained "800 to 825....strong franchises" at Brooke Capital;

(j)     On or about April, 2008, defendants **ROBERT D. ORR** and **LELAND G. ORR** directed Brooke Capital employees to delay forwarding a percentage of customer insurance premiums, and instead use the funds for the company's own operating expenses;

(k)     From on or about March to September, 2008, defendants **ROBERT D. ORR** and **LELAND G. ORR** directed Brooke Capital employees to systematically delay or withhold payments to its creditors;

(l)     On or about March to May, 2008, defendant **LELAND G. ORR** misstated Brooke Capital's financial results for the first quarter of 2008, by failing to write off unrecoverable amounts owed to Brooke Capital by failed franchisees;

(m)     Beginning on or about March, 2007, and continuing thereafter until on or about August, 2008, the defendants concealed Aleritas' inability to fully refinance its working capital from the SEC and lenders by failing to describe or disclose such in public filings and statements;

(n)     On May 12, 2008, defendant **ROBERT D. ORR** falsely

-14-

claimed in Alerita's second quarter financial analyst conference call, that Aleritas had discontinued use of the credit facility to which collateral had been double-pledged in order to "save fees", and that the company continued to enjoy "good working relationships" with its remaining credit facility and lenders.

(o)  On or about May 13, 2008, defendant **ROBERT D. ORR** omitted disclosure of collateral double-pledging in Aleritas' Form 10-Q for the first quarter of 2008.   Instead, he mischaracterized the reason for a large increase in Aleritas accounts payable as partially attributable to a "delay in making loan payments and loan payouts."

(p)  Beginning in March, 2008, and continuing to on or about August, 2008, a person known to the Grand Jury falsified the credit evaluation reports to a credit facility by directing a clerical employee to double the actual revenue reported by franchise loans initially rated as "fail or watch."    Doubling franchisees' revenue, reduced the franchisees' debt to revenue ratios, which distorted or falsely improved Brooke Company loan ratings and deceived lenders.

All in violation of Title 18, United States, Code § 371, §2 and §3551 et seq.

## COUNT TWO

(False Statement in Report to be Filed with the SEC)

The Government realleges and incorporates by reference, the allegations in paragraphs one (1) through twenty-two (22) of Count One of this Indictment.

On or about and between November 1, 2007, and March 17, 2008, said dates being approximate and inclusive within the District of Kansas and elsewhere defendants, **ROBERT D. ORR** and **LELAND G. ORR** together with others, did knowingly and willfully make and cause to be made statements in a report and document required to be filed under the Securities and Exchange Act of 1934, Title 15, United States Code, Sections 78a et. seq., and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, in that defendants filed and caused to be filed with the SEC Brooke Corporation's 2007 annual report on Form 10-K for the year ending December 31, 2007, which the defendants then knew, misstated or failed to state the following:

(a)     A statement that Brooke Capital had 882 franchise locations when, in fact, approximately 150 of those franchises had failed;

(b)     Failure to state material facts regarding Brooke Capital's extensive financial assistance to unprofitable franchises unable to make their loan payments to Aleritas, and how such assistance had materially decreased Brooke Capital's liquidity;

-16-

All in violation of Title 15, United States Code Section 78ff(a) and Title 18, United States Code, Sections 2 and 3551 et. seq.

COUNT THREE

(False Statement in Report to be Filed with the SEC)

The Government realleges and incorporates by reference, the allegations in paragraphs one (1) through twenty two (22) of Count One of this Indictment.

On or about and between November 1, 2007, and March 17, 2008, said dates being approximate and inclusive within the District of Kansas and elsewhere defendants, **ROBERT D. ORR** and **LELAND G. ORR** together with others, did knowingly and willfully make and cause to be made statements in a report and document required to be filed under the Securities and Exchange Act of 1934, Title 15, United States Code, Sections 78a et. seq., and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, in that defendants filed and caused to be filed with the SEC Brooke Capital's 2007 annual report on Form 10-K for the year ending December 31, 2007, which the defendants then knew, misstated or failed to state the following:

(a)     Failure to state material facts disclosing the high percentage of franchisees requiring financial assistance, and its impact on liquidity;

(b)     Failure to state material facts disclosing that the dollar amount of its financial assistance to franchisees had materially

-17-

decreased Brooke Capital's liquidity;

(c)     Failure to state material facts disclosing that its financial

assistance to franchisees included making loan payments to its

sibling company, Aleritas, on behalf of dozens of unprofitable

franchises unable to make their loan payments;

(d)     Omission of analysis and nondisclosure of the failure of

approximately 150 startup franchise locations as an

unfavorable trend in the MD&A section of Brooke Capital's

2007 Form10-K.   To the contrary, Brooke Capital's MD&A

misrepresented the favorable impact of franchisee expansion

over recent fiscal years by stating "[our] combined results of

operation have been significantly impacted by expansion of

franchise locations in recent years."

All in violation of Title 15, United States Code Section 78ff(a) and Title 18, United States

Code, Sections 2 and 3551 et. seq.

<u>COUNT FOUR</u>

(False Statement in Report to be Filed with the SEC)

The Government realleges and incorporates by reference, the allegations in

paragraphs one (1) through twenty two (22) of Count One of this Indictment.

On or about and between January 1, 2008, and May 14, 2008, said dates being

approximate and inclusive within the District of Kansas and elsewhere defendants,

**ROBERT D. ORR** and **LELAND G. ORR**, together with others, did knowingly and willfully make and cause to be made statements in a report and document required to be filed under the Securities and Exchange Act of 1934, Title 15, United States Code, Sections 78a et. seq., and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, in that defendants filed and caused to be filed with the SEC Brooke Corporations 2008 first quarter report on Form 10-Q for the quarter ending March 31, 2008, which the defendants then knew, misstated or failed to state the following:

  (a) Failure to state material facts disclosing that Brooke Capital made loan payments to Aleritas on behalf of unprofitable franchisees;

  (b) Failure to state material facts disclosing that Aleritas had not reserved for or written down approximately $7.9 million of additional loan losses relating to Brooke Capital's failed startup franchise locations.   Such caused Brooke Corporation's 2008 first quarter net loss to be understated by 11% and made its Form 10-Q for the quarter materially false and misleading.

All in violation of Title 15, United States Code Section 78ff(a) and Title 18, United States Code, Sections 2 and 3551 et. seq.

COUNT FIVE

(False Statement in Report to be Filed with the SEC)

The Government realleges and incorporates by reference, the allegations in paragraphs one (1) through twenty two (22) of Count One of this Indictment.

On or about and between January 1, 2008, and May 12, 2008, said dates being approximate and inclusive within the District of Kansas and elsewhere defendant, **ROBERT D. ORR**, together with others, did knowingly and willfully make and cause to be made statements in a report and document required to be filed under the Securities and Exchange Act of 1934, Title 15, United States Code, Sections 78a et. seq., and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, in that defendants filed and caused to be filed with the SEC Aleritas Capital Corporation's 2008 first quarter report on Form 10-Q for the quarter ending March 31, 2008, which the defendant then knew, misstated or failed to state the following:

    (a)    Failure to state material facts disclosing Aleritas' default on almost $17 million of short-term participations by the end of the first quarter 2008;

    (b)    Failure to state material facts disclosing that Aleritas' only remaining credit facility had halted its credit relationship because of Aleritas' improper pledge of duplicate and ineligible collateral, thereby making its Form 10-Q for the first quarter 2008 materially false and misleading;

    (c)    A statement that the reason for the large increase in Aleritas'

accounts payable as partially attributable to a "delay in

making loan payments and payoffs" when, in fact, the

increase related to over-pledged loans and ineligible

collateral.

All in violation of Title 15, United States Code Section 78ff(a) and Title 18, United States

Code, Sections 2 and 3551 et. seq.

## COUNT SIX

### (False Statement in Report to be Filed with the SEC)

The Government realleges and incorporates by reference, the allegations in paragraphs one (1) through twenty two (22) of Count One of this Indictment.

On or about and between April 1, 2008, and August 18, 2008, said dates being approximate and inclusive within the District of Kansas and elsewhere defendant, **ROBERT D. ORR**, together with others, did knowingly and willfully make and cause to be made statements in a report and document required to be filed under the Securities and Exchange Act of 1934, Title 15, United States Code, Sections 78a et. seq., and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, in that defendants filed and caused to be filed with the SEC Aleritas Capital Corporation's 2008 second quarter report on Form 10-Q for the quarter ending June 30, 2008, which the defendant then knew, misstated or failed to state the following:

(a)     Failure to state material facts disclosing that Brooke Capital made loan payments to Aleritas on behalf of unprofitable franchisees, thereby concealing the existing poor condition of Aleritas' loan portfolio from investors, lenders and outside auditors;

(b)     Failure to state material facts disclosing that Aleritas' loan portfolio had deteriorated within the second quarter of 2008.

To the contrary, no significant additional loss reserves were

included in Aleritas' financial statements accompanying its

Form 10-Q for the second quarter of 2008.   In doing so,

Aleritas did not disclose loss reserves for more than 50

troubled franchises scheduled for liquidation during the

second quarter.   Such caused its net loss before taxes to be

understated making its Form 10-Q for the second quarter of

2008 materially false and misleading.

All in violation of Title 15, United States Code Section 78ff(a) and Title 18, United States

Code, Sections 2 and 3551 et. seq.

<u>COUNT SEVEN</u>

(False Declaration in Relation to a Bankruptcy Petition)

<u>INTRODUCTION</u>

At all times relevant to this Indictment:

1.    On or about April 21, 2008, defendant, **ROBERT D. ORR**, provided

$500,000 to his son, Casey R. Orr, and $500,000 to his son-in-law, Nicholas S. Rhodes

for a total of $1,000,000.    The two transactions were not documented, but described as a

loan from Brooke Holdings to defendant, **ROBERT D. ORR**, and as personal loans from

**ROBERT D. ORR** to his son and son-in-law.

2.    On or about May 14, 2008, defendant, **ROBERT D. ORR**, provided an

additional $100,000 each to his son, Casey R. Orr, and his son-in-law, Nicholas S.

Rhodes.   Shortly thereafter, **ROBERT D. ORR** requested and received a repayment of $58,000 from his son, and $80,000 from his son-in-law, for a total of $138,000 repaid. The net sum of money provided to Casey Orr and Nick Rhodes by defendant, **ROBERT D. ORR**, in April and May, 2008 was $1,062,000.

3.    The net sum of $1,062,000 was provided to Casey Orr and Nick Rhodes by defendant, **ROBERT D. ORR**, for the purpose of having Casey Orr and Nick Rhodes purchase and possess stock shares in Brooke Corporation and other Brooke Companies. While defendant, **ROBERT D. ORR**, described the transactions as loans, the $1,062,000 money transfer was undocumented.   Additionally, defendant **ROBERT D. ORR**, communicated to his son and son-in-law that they would not incur any loss because he did not expect repayment of the $1,062,000 regardless of stock purchase results.

4.    On December 16, 2008, defendant **ROBERT D. ORR**, filed bankruptcy in Chapter 11 proceeding seeking the discharge of $49,665,945.49 in unsecured debt.   The bankruptcy was filed in the United States Bankruptcy Court, District of Kansas, as Case No. 08-13242.   The bankruptcy petition was signed by the defendant under the penalty of perjury.

5.    In conjunction with his bankruptcy petition, defendant, **ROBERT D. ORR**, was required to prepare and file a Statement of Financial Affairs.   On January 7, 2009, defendant did in fact file a Statement of Financial Affairs in Bankruptcy Case No. 08-13242, also signed under the penalty of perjury.

6.    In his Statement of Financial Affairs, defendant **ROBERT D. ORR**, failed to

-24-

describe and disclose his transfer of $1,062,000 to his son, Casey R. Orr, or son-in-law, Nicholas S. Rhodes, as Gifts under Question 7-Gifts.   Nor did defendant describe or disclose the transactions totaling $1,062,000 as accounts receivable in Schedule B-Personal Property, Item 16, in his Statement of Financial Affairs.   Nowhere in said Statement did the defendant, **ROBERT D. ORR**, describe or disclose the April and May, 2008 money transfers to family members totaling $1,062,000.

7.    Paragraph 1 through 6 above are incorporated as though fully set out herein.

8.    On or between December 16, 2008, and January 7, 2009, in the District of Kansas, defendant, **ROBERT D. ORR**, knowingly and fraudulently made a materially false declaration, certificate, verification, and statement, under the penalty of perjury, in and in relation to a case under Chapter 11, United States Code, Case No. 08-13242, in the United States Bankruptcy Court, District of Kansas, when on his Statement of Financial Affairs, which required defendant to disclose either gifts or accounts receivables, defendant failed to disclose money transfers to his son, Casey R. Orr, and son-in-law, Nicholas S. Rhodes, totaling $1,062,000.

All in violation of Title 18, United States Code, Section 152(3), and Title 18, United States Code, Section 2.

## NOTICE OF FORFEITURE

THE GRAND JURY FURTHER CHARGES THAT:

As a result of committing one or more of the foregoing securities offenses alleged in Counts One through Six of this indictment, **ROBERT D. ORR** and **LELAND G.**

**ORR**, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses alleged in Counts One through Six, including but not limited to the following:

<u>Money Judgment</u>

a.      At least a sum of money in United States currency which was derived from proceeds traceable to the commission of the securities fraud offenses alleged in Counts One through Six.

<u>Substitute Assets Provision</u>

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 15, United States Code, Sections 78j(b) and 78ff;  Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(C); and Title 17, Code of Federal Regulations, Section 240.10b-5)

# A TRUE BILL

November 14, 2012            /s/   Foreperson
    DATE                  FOREPERSON OF THE GRAND JURY

s/K. Michael Warner, Ks. S.Ct. No. 11880
First Assistant United States Attorney
for BARRY R. GRISSOM
UNITED STATES ATTORNEY
DISTRICT OF KANSAS
500 State Avenue, Suite 360
Kansas City, KS 66101
913.551.6730
913.551.6541 (Fax)
barry.grissom@usdoj.gov
Ks. S.Ct. No. 10866

**It is requested that the trial be held in Topeka, Kansas**